**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| ALE SOLUTIONS, INC., an Illinois corporation, | |
| Plaintiff, | |
| v. | Case No. _____ |
| STARPOINT DIGITAL, INC., d/b/a EXPRESS HOTEL HOUSING, an Illinois corporation; THERESA PALAZZO; DANIEL C. MARLOW; and ALFREDO GARCIA, | Judge: <br><br> Magistrate Judge: |
| Defendants. | |

## <u>COMPLAINT</u>

Plaintiff, ALE Solutions, Inc., by and through its attorneys, Aronberg Goldgehn Davis & Garmisa, for its Complaint against Defendants, Starpoint Digital, Inc., d/b/a Express Hotel Housing, Theresa Palazzo, Daniel C. Marlow, and Alfredo Garcia alleges the following:

## <u>THE PARTIES, JURISDICTION AND VENUE</u>

1.      Plaintiff, ALE Solutions, Inc. ("ALE") is an Illinois corporation with its principal place of business located in St. Charles, Illinois.

2.      Starpoint Digital, Inc. ("Starpoint") is an Illinois corporation with its principal place of business located in Schaumburg, Illinois.  Starpoint is registered with the Illinois Secretary of State to do business under the assumed names Express Hotel Housing ("Express Hotel") and Yournet Connection.

3.      Theresa Palazzo ("Palazzo") is an individual who, upon information and belief, resides in St. Charles, Illinois.

4.      Daniel C. Marlow ("Marlow") is an individual who, upon information and belief, resides in Hoffman Estates, Illinois.

5.      Alfredo Garcia ("Garcia") is an individual who, upon information and belief, resides in West Chicago, Illinois.  Herein, Starpoint, Palazzo, Marlow and Garcia are collectively referred to as "Defendants."

6.      Jurisdiction is proper pursuant to 28 U.S.C. § 1331 because ALE asserts claims under the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

7.      This Court has supplemental jurisdiction over ALE's state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this district, and because one or more of the Defendants reside within this district.

## COMMON FACTUAL ALLEGATIONS

### Background of ALE

9.      ALE is the leading provider in the United States and Canada of temporary housing solutions for homeowners displaced from their residences due to catastrophic events or other displacing events.

10.      ALE has three (3) primary working sections which provide a wide band of services for all-inclusive temporary housing solutions when situating displaced homeowners either in individual housing ("Housing Solutions"), hotels ("Hotel Solutions"), as well as providing first responder "boots on the ground" to coordinate a wide range of catastrophe services ("Catastrophe Solutions").

11.      ALE was founded in February 2001 by Rowena Zimmers, and she is the President of ALE.  The company is certified by the Women's Business Enterprise National Council and the Chicago Minority Supplier Development Council.  ALE has over 300 employees located in its St. Charles, Illinois headquarters and generates annual revenues exceeding $400 million.

12.     ALE's primary customers are insurance companies whose adjusters rely upon ALE to place their policyholders in temporary housing until their residence is ready to be reoccupied.  ALE revolutionized the temporary housing industry by introducing a "cost plus" transparent pricing model that enabled insurance adjusters to ascertain the cost of temporary housing separate from the monthly fee for placement services.

13.     In Housing Solutions, ALE secures ideal temporary housing for the policyholder, normally in the family's same neighborhood within 24-hours of first contact, by determining the type of property that fits a policyholder's needs, negotiating a lease, and coordinating the showings and move-in date.  ALE employs housing relocation specialists nationwide who have access to ALE's custom search engine for locating potential housing properties on ALE's database.

14.     In or about 2007, ALE introduced its "Hotel Solutions" model that offered a proactive emergency solution for policyholders needing immediate hotel arrangements.

15.     In Hotel Solutions, within an hour of receiving a First Notice of Loss from an adjuster, ALE secures a nearby, cost-effective hotel accommodation for a policyholder.  ALE manages every detail of the hotel stay, including all paperwork, billing and coordinating extensions and check-out dates.

16.     In Catastrophe Solutions, ALE's CAT Logistics Team works with both adjusters and policyholders needing housing post disaster by providing immediate deployment of resources to the impacted area to meet the critical housing demands in chaotic situations and limited housing availability.  ALE utilizes an on-site experienced team that seeks rental properties on behalf of a policyholder as well as available hotels at a discounted rate during high

occupancy without out-of-pocket costs for the policyholder. ALE formalized its CAT Logistics department in 2010.

17. ALE has responded to virtually every catastrophic event in the United States over the past fourteen (14) years, including Hurricane Katrina (2005), Hurricane Sandy (2012), tornados in Joplin Missouri (2011), Moore, Oklahoma (2013) and Tuscaloosa, Alabama (2011), and the 2015 California wildfire. ALE was contracted by BP Global following the 2010 Gulf of Mexico oil spill to provide all of its disaster temporary housing.

18. ALE has service agreements with each of the top ten (10) national property insurance carriers, operating in the United States and Canada, as well as many smaller carriers. ALE is the sole provider to five (5) of the top twenty (20) national property and casualty insurance carriers.

19. Multiple key performance metrics first authored by ALE are currently accepted as standard in the temporary housing and disaster response industry.

20. ALE's operational organization includes six (6) Hotel National Account Managers ("Hotel NAMs") and seven (7) National Account Managers who through direct client meetings and ongoing communications develop and maintain relationships with local and regional insurance claims adjusters and executives for ALE Hotel Solutions and Housing Solutions. National Account Managers service the needs of ALE Long Term Housing Division while Hotel NAMs service the needs of Hotel Solutions.

21. Each Hotel NAM has a specific insurance adjuster client list for which he or she is responsible and each also is required to be able to assist with any client on any other Hotel NAM client list.

22.     The Hotel NAMs are the operational "face" of ALE and the company's single point of contact between ALE and its customer insurance adjusters for Hotel Solutions. In addition to developing and maintaining client relationships with the adjusters, Hotel NAMs are responsible for, among other things, initiating and processing all incoming claims, maintaining e-file claims sheets, communicating all claim updates to insurance adjusters, updating insurance adjuster contact information, monitoring ALE limits and coverage balances and monitoring renter policies and abatement balances and collections related to Hotel Solutions.

23.     In order to perform their jobs, Hotel NAMs are allowed access to and trusted with all of ALE's confidential and proprietary information related to its temporary housing placement processes and procedures, including ALE's pricing terms, client contracts, and client lists, all which are stored in a secured folder on ALE's database only accessible by the Hotel NAMs.

24.     Hotel NAMs are the single most critical client connection role within the company for Hotel Solutions.

### The ALE Database

25.     ALE has grown its business since 2001 by developing relationships with insurance adjusters and managers within the claims organizations of the largest property insurance carriers in the United States.

26.     ALE maintains a comprehensive electronic database of each property insurance adjuster who has done and does business with ALE (the "ALE Database").

27.     The ALE Database contains over 20,000 unique insurance adjuster contacts that have been assembled by ALE from over fourteen (14) years of doing business. The ALE Database includes adjusters' names, addresses, email addresses, and either cell phone numbers or direct business telephone extensions.

28.     As an industry practice, insurance carriers do not disclose the names of their adjusters or their contact information, meaning that a provider, such as the newly minted Express Hotel, must do prior business with an adjuster to get the adjuster's contact information.

29.     An insurance adjuster's professional business and personal contact information is not known or available to the general public.

## The MyALE Portal

30.     In March, 2014, ALE introduced an online claims portal (the "MyALE Portal") that provides insurance adjusters the ability to initiate claims and filter claim information from any electronic device, such as a desktop computer, laptop computer, tablet, smartphone or other personal device, on demand.

31.     In November 2015, ALE trademarked "MyALE" as a word mark in connection with providing an internet website portal for insurance adjusters and insurance company managers to view all of the details of a pending insurance claim to which their policyholder is a party; and which allows these adjusters to, among other things, provide extensions or move out notices prior to the termination of a lease, to request customer service and any cost saving metrics and to communicate with their account manager.

32.     ALE also trademarked  "Simple. Mobile. Personal." as a word mark in association with the MyALE Portal.

33.     The MyALE Portal was custom-developed by ALE over an eight (8) month period at a cost of approximately $250,000.  In the nineteen (19) months since launching the MyALE Portal, ALE has invested an additional $250,000 in support and development of new features for the MyALE Portal.

34.     Insurance adjusters with a current claim with ALE are provided access to the MyALE Portal with a dedicated username and password.

35.     Once logged in, an insurance adjuster is able to initiate claims, extend hotel or housing stays, retrieve statements or invoices, filter claims data, set contact preferences, and track open balances.

36.     ALE Hotel NAMs, National Account Managers and Regional Sales Managers are provided partial administrative access to the MyALE Portal via a secure username and password that affords them access to the same content as an insurance adjuster.

37.     Proprietary information such as ALE's customer list, process and procedures, customer pricing, website content, and billing and invoice data are all accessible on the MyALE Portal to ALE Hotel NAMs, National Account Managers and Regional Sales Managers.

38.     Insurance adjuster's use of the MyALE Portal is subject to their acknowledgement and acceptance of the MyALE Terms of Service, which states that:

> BY USING ANY PART OF THE MYALE SERVICE OR BY COMPLETING ANY REGISTRATION WITHIN MYALE, YOU AGREE TO BE BOUND BY ALL OF THER TERMS AND CONDITIONS HEREIN.  You may continue to use the MyALE Service as long as you adhere to these Terms of Service.

39.     The Terms of Service provide that every user is solely responsible for maintaining the confidentiality of his or her password and account and agrees not to transfer access to MyALE to anyone else.

40.     Pursuant to the Terms of Service, all content included on the MyALE Portal such as text, graphics, logos, button icons, images, audio clips and software are the property of ALE and protected by U.S. copyright laws.

41.     The Terms of Service prohibit any user from copying, uploading, posting or otherwise making the content available.

7

42.     The source code and data to the operating program for the MyALE Portal is not known or available to the general public.

## Theresa Palazzo

43.     Palazzo was hired by ALE as a "Hotel Receptionist" on or about May 29, 2012.

44.     As a Hotel Receptionist, Palazzo was responsible for handling incoming requests for services from adjusters, policyholders and hotels, transferring them to the appropriate ALE contact person to respond to their needs and provide necessary services, maintaining records of all communications with adjusters and policyholders, and assisting in maintaining records for completed claims.

45.     Palazzo was promoted to Hotel National Account Manager on or about January 27, 2015.  Palazzo was one (1) of only six (6) Hotel NAMs at ALE.

46.     As a Hotel NAM, Palazzo had access to and did access ALE's confidential and proprietary information related to its temporary housing placement processes and procedures, including ALE's pricing terms, client contracts, and client lists, all which are stored in a secured folder on ALE's database only accessible by the Hotel NAMs.

47.     As a Hotel NAM, Palazzo had access to and did access ALE's confidential and proprietary information such as ALE's customer list, process and procedures, customer pricing, website content, and billing and invoice data accessible on the MyALE Portal.

48.     As Hotel NAM, Palazzo had knowledge of and access to all of ALE's operational, proprietary and Confidential Information regarding its Hotel Solutions program.

49.     On or about May 29, 2012, as a material inducement for ALE to extend a certain Offer of Employment to Palazzo, Palazzo executed a certain Confidentiality, Nonsolicitation and

Noncompetition Agreement (the "Palazzo Nonsolicitation Agreement"). A true and accurate copy of the Palazzo Nonsolicitation Agreement is attached as **Exhibit A**.

50.     The Palazzo Nonsolicitation Agreement defines confidential information (the "Confidential Information") as any information, whether or not developed by ALE or Palazzo, relating to ALE's business, its customers, or its business plans and practices, which gives ALE a competitive advantage over others, including but not limited to:

- ALE's financial information, marketing plans and strategies, business models and strategies, systems, research, database information, surveys, plans, reports, recommendations [and] conclusions which have been created by ALE through its employees, consultants or independent contractors.

- The financial arrangements with ALE's customers, ALE's customer lists or names of specific customers, ALE's customer financial profiles and budgets, and specific customer information compiled or obtained through ALE's efforts.

- The identity of those persons or entities who ALE has identified as prospects for business relationships with ALE or with whom ALE has actively been attempting to develop a business relationship.

- Training materials, technical information, work products and know-how developed by ALE through its employees, agents or consultants, or to which ALE has purchased exclusive or limited rights.

- The composition of ALE's various services, internal procedures and processes and the manner in which they are implemented.

- The operating, cost and other management information systems, and other software and programming developed by or for ALE, or to which ALE has purchased exclusive or limited rights.

51.     The Palazzo Nonsolicitation Agreement contains the following Non-Disclosure provisions:

- [Palazzo] shall not directly or indirectly disclose or permit disclosure of any Confidential Information to any Person, other than employees of ALE who have executed an agreement in this form in favor of ALE, without the written consent of ALE whether or not such Confidential Information was prepared by [Palazzo].

9

- [Palazzo] shall not, except in furtherance of the business of ALE, directly or indirectly use any Confidential Information other than as directed by ALE, or permit its use for the direct or indirect benefit of any person other than ALE.

- [Palazzo] shall not, except in furtherance of the business of ALE, remove Confidential Information from ALE's premises without the prior written consent of ALE, and [Palazzo] shall not copy [any] Confidential Information onto any medium, including without limitation, tapes, magnetic or optical disks, or hard drive on any personal computer, which does not remain on the premises of ALE.

- [Palazzo] shall take all actions necessary to avoid disclosure of the Confidential Information in violation of any of the preceding subsections and to otherwise maintain the confidential, trade secret or proprietary nature of such Confidential Information.

- [Palazzo] shall hold in a fiduciary capacity for the benefit of ALE all Confidential Information . . . during the term of [Palazzo's] employment which may be directly or indirectly useful in or related to the business of ALE or its affiliates.

52.     The Palazzo Nonsolicitation Agreement prohibits Palazzo from soliciting ALE employees and customers by stating in relevant part that except in furtherance of the business activities of ALE, Palazzo shall not directly or indirectly during Palazzo's employment, and for a period of twenty-four (24) months following the termination of Palazzo's employment:

- Solicit, divert or accept the business of, or call upon, any person who is or was at the time of the termination of the employment relationship between [Palazzo] and ALE (i) a customer of ALE, (ii) a supplier of services to ALE, (iii) a finder or broker, who had a business relationship with ALE at any time during the period of [Palazzo's] employment, or (iv) an affiliate of any such person.

- Approve, solicit or retain, or discuss the employment or retention (whether as a consultant or otherwise) by a Competing Person of any person who was an employee of ALE at anytime during the one-year period preceding the termination of Employee's Employment.

- Solicit or encourage any person to leave the employ of ALE.

- Own any interest in or be employed by or provide any services to any person or entity which engages in any conduct which is prohibited to [Palazzo] under this Section 3.

53.     Pursuant to the Palazzo Nonsolicitation Agreement, before accepting a position of employment following the termination of Palazzo's position with ALE, Palazzo is obligated to disclose to such person the nonsolicitation and nondisclosure terms of the Palazzo Nonsolicitation Agreement.

54.     In furtherance of her employment with ALE, Palazzo received a copy of ALE's Employee Handbook (the "Handbook").  A true and accurate copy of the Handbook with Palazzo's signed acknowledgement on May 29, 2012, is attached as **Exhibit B**.

55.     The Handbook, in pertinent parts, prohibits:

- The unauthorized disclosure of ALE Confidential Information or misappropriation of  ALE trade secrets; and

- The falsification of, or tampering with, employment records, production records, and any other records pertinent to the operation of any part of ALE.

56.     The Handbook includes an Electronic Communications Policy by which the use of computers as well as any software is strictly limited to business purposes and all electronic information stored in ALE's systems are the property of ALE and are to be used solely for job-related purposes.

57.     The Handbook reiterates that confidential or sensitive information is not to be sent electronically and that employees are responsible for protecting the confidentiality and security of any Confidential Information and documents.  If an employee is authorized to access his or her computer outside the office, the employee is responsible for ensuring that people who are not employed by ALE cannot gain access to any information or documents on the employee's ALE computer.

58.     The Handbook provides that all passwords are the property of ALE and that assigned passwords are not to be given out to anyone.

59.     As part of her duties and responsibilities as a Hotel NAM, Palazzo had partial access to MyALE Portal through a unique username and password.

60.     On or about July 24, 2015, Palazzo gave verbal notice of her voluntary resignation from ALE.

61.     Palazzo informed ALE that she intended to pursue a career in fashion while being supported by her boyfriend, Marlow.

62.     On or about August 3, 2015, Palazzo submitted a formal letter of resignation.

63.     Palazzo's last day of employment at ALE was August 7, 2015.

## Alfredo Garcia

64.     Garcia was hired by ALE as a Hotel Coordinator on or about November 1, 2010.

65.     As a Hotel Coordinator, Garcia was heavily involved in ALE's hotel placement operations, Hotel Solutions.

66.     Garcia worked closely with hotels to establish pricing and rates for policyholder placement and communicated ALE's hotel options to the policyholders.

67.     Garcia's unique qualifications and knowledge of ALE's hotel placement operations resulted in ALE promoting Garcia to a Client Rapid Response Supervisor in March, 2014, a position created specifically for Garcia.

68.     As a Client Rapid Response Supervisor, Garcia was responsible for providing immediate solutions to urgent problems, developing new procedures to control the flow of incoming calls and training new ALE employees to handle emergency hotel claims.

69.     Garcia developed new procedures for placing policyholders in hotels and developed working relationships with hotels for placement services.

70. ALE highly trusted Garcia and empowered him to resolve policyholder and hotel problems on his own initiative based on his experience in ALE's operations.

71. On or about November 1, 2010, as a material inducement for ALE to extend a certain Offer of Employment to Garcia, Garcia executed a certain Confidentiality, Nonsolicitation and Noncompetition Agreement (the "Garcia Nonsolicitation Agreement"). A true and accurate copy of the Garcia Nonsolicitation Agreement is attached as **Exhibit C**.

72. The Garcia Nonsolicitation Agreement defines Confidential Information as any information, whether or not developed by ALE or Garcia relating to ALE's business, its customers, or its business plans and practices, which gives ALE a competitive advantage over others, including but not limited to:

- ALE's financial information, marketing plans and strategies, business models and strategies, systems, research, database information, surveys, plans, reports, recommendations conclusions which have been created by ALE through its employees, consultants or independent contractors.

- The financial arrangements with ALE's customers, ALE's customer lists or names of specific customers, ALE's customer financial profiles and budgets, and specific customer information compiled or obtained through ALE's efforts.

- The identity of those persons or entities who ALE has identified as prospects for business relationships with ALE or with whom ALE has actively been attempting to develop a business relationship.

- Training materials, technical information, work products and know-how developed by ALE through its employees, agents or consultants, or to which ALE has purchased exclusive or limited rights.

- The composition of ALE's various services, internal procedures and processes and the manner in which they are implemented.

- The operating, cost and other management information systems, and other software and programming developed by or for ALE, or to which ALE has purchased exclusive or limited rights.

73.     The Garcia Nonsolicitation Agreement contains the following Non-Disclosure

provisions:

- [Garcia] shall not directly or indirectly disclose or permit disclosure of any Confidential Information to any Person, other than employees of ALE who have executed an agreement in this form in favor of ALE, without the written consent of ALE whether or not such Confidential Information was prepared by [Garcia].

- [Garcia] shall not, except in furtherance of the business of ALE, directly or indirectly use any Confidential Information other than as directed by ALE, or permit its use for the direct or indirect benefit of any person other than ALE.

- [Garcia] shall not, except in furtherance of the business of ALE, remove Confidential Information from ALE's premises without the prior written consent of ALE, and [Garcia] shall not copy [any] Confidential Information onto any medium, including without limitation, tapes, magnetic or optical disks, or hard drive on any personal computer, which does not remain on the premises of ALE.

- [Garcia] shall take all actions necessary to avoid disclosure of the Confidential Information in violation of any of the preceding subsections and to otherwise maintain the confidential, trade secret or proprietary nature of such Confidential Information.

- [Garcia] shall hold in a fiduciary capacity for the benefit of ALE all Confidential Information . . . during the term of [Garcia's] employment which may be directly or indirectly useful in or related to the business of ALE or its affiliates.

74.     The Garcia Nonsolicitation Agreement prohibits Garcia from soliciting ALE

employees and customers by stating in relevant part that except in furtherance of the business

activities of ALE, Garcia shall not directly or indirectly during Garcia's employment and for a

period of twenty-four (24) months following the termination of Garcia's employment:

- Solicit, divert or accept the business of, or call upon, any person who is or was at the time of the termination of the employment relationship between [Garcia] and ALE (i) a customer of ALE, (ii) a supplier of services to ALE, (iii) a finder or broker, who had a business relationship with ALE at any time during the period of [Garcia's] employment, or (iv) an affiliate of any such person.

- Approve, solicit or retain, or discuss the employment or retention (whether as a consultant or otherwise) by a Competing Person of any person who was an employee of ALE at anytime during the one-year period preceding the termination of Employee's Employment.

- Solicit or encourage any person to leave the employ of ALE.

- Own any interest in or be employed by or provide any services to any person or entity which engages in any conduct which is prohibited to [Garcia] under this Section 3.

75.     Pursuant to the Garcia Nonsolicitation Agreement, before accepting a position of employment following the termination of Garcia's position with ALE, Garcia is obligated to disclose to such person the nonsolicitation and nondisclosure terms of the Garcia Nonsolicitation Agreement.

76.     In furtherance of his employment with ALE, Garcia received a copy of the Handbook.  A true and accurate copy of the Handbook with Garcia's signed acknowledgement on November 1, 2010 is attached as **Exhibit D**.

77.     The Handbook, in pertinent parts, prohibits:

- The unauthorized disclosure of ALE Confidential Information or misappropriation of  ALE trade secrets; and

- The falsification of, or tampering with, employment records, production records, and any other records pertinent to the operation of any part of ALE.

78.     The Handbook includes an Electronic Communications Policy by which the use of computers as well as any software is strictly limited to business purposes and all electronic information stored in ALE's systems are the property of ALE and are to be used solely for job-related purposes.

79.     The Handbook reiterates that confidential or sensitive information is not to be sent electronically and that employees are responsible for protecting the confidentiality and security of any Confidential Information and documents.  If an employee is authorized to access his or

her computer outside the office, the employee is responsible for ensuring that people who are not employed by ALE cannot gain access to any information or documents on employee's ALE computer.

80.     The Handbook provides that all passwords are the property of ALE and that assigned passwords are not to be given out to anyone.

81.     On or about August 13, 2015, Garcia submitted his notice of resignation.

82.     Garcia informed ALE that he had accepted an offer of employment with the Aurora Hispanic Chamber of Commerce.

83.     Garcia's last day of employment with ALE was August 27, 2015.

## Palazzo Misappropriates Confidential Information from ALE

84.     In the final months of her employment with ALE, Palazzo abused her position at ALE, breached the Palazzo Nonsolicitation Agreement, and violated company policy set forth in the Handbook by downloading and copying ALE's confidential insurance adjusters' professional contact information and disclosing her MyALE Portal username to a third-party for the purpose of downloading and copying the MyALE Portal operating program, source code and/or operating data.

85.     On or about July 28, 2015, Palazzo's ALE username was used to login to the MyALE Portal seven (7) times between 2:00 p.m. and 4:00 p.m. from an IP address, 99.183.236.46, located outside of ALE's offices (the "Outside IP Address").  During this time, Palazzo is recorded to have been physically present at ALE's office and logged into her own computer workstation.

86.     According to geolocation data obtained from https://www.iplocation.net, the Outside IP Address accessed the MyALE Portal from the Hoffman Estates/Chicago area using an AT&T U-Verse internet connection.

87.     Later that same day, the Outside IP Address was used again to log in to the MyALE Portal using Palazzo's username no fewer three (3) times between 8:00 p.m. and 10:00 p.m.

88.     In addition to the successful login attempts described above, the Outside IP Address unsuccessfully attempted to login to the MyALE Portal eight (8) times on July 28, 2015.

89.     After Palazzo's departure from ALE, ALE discovered ten (10) Excel spreadsheets (the "Palazzo Spreadsheets") created and subsequently deleted by Palazzo. The Palazzo Spreadsheets contained identical database field names as the ALE Database.

90.     The Palazzo Spreadsheets were created over a span of several months and include the contact data of an estimated 20,000 ALE insurance adjusters customers stored on the ALE Database, including each adjuster's name, email address, and telephone numbers (the "Stolen Contact Data").

91.     Palazzo had no legitimate business purpose to download and copy ALE's confidential insurance adjuster customer's professional contact information and to create the Palazzo Spreadsheets.

92.     On information and belief, Palazzo forwarded the Palazzo Spreadsheets with the Stolen Contact Data from her ALE computer to a personal online internet account, either by downloading the Palazzo Spreadsheets into her Google Documents account or through a similar electronic data transfer.

**Palazzo, Garcia and Marlow Create Express Hotel Housing**

93.     Through their positions at ALE, Palazzo and Garcia were uniquely qualified and experienced with ALE's entire Hotel Solutions program.  Together Palazzo and Garcia were fully versed on ALE's Hotel Solutions client services and operations.

94.     In or around June 2015, on information and belief, Palazzo, Garcia and Marlow created Express Hotel, which is described on its website as providing "Fast Customized Relocation of your valued Policy Holders."

95.     Despite having been in existence for only five (5) months, Express Hotel claims on its website advertising that 93% of adjusters and 98% of policy holders are satisfied with its services, and 98% of hotels that do business with it "Express Overall Satisfaction."

96.     On information and belief, Express Hotel is a direct competitor of ALE and claims to provide temporary housing and hotel placements as well catastrophe logistics, identical services as those provided by ALE.

97.     On information and belief, Express Hotel is entirely based upon and created from Palazzo and Garcia's work experience with ALE and the confidential and proprietary information misappropriated from ALE, including but not limited to the Stolen Contact Data and operating program of the MyALE Portal.

98.     Palazzo identifies herself as Express Hotel's Vice President of National Accounts.

99.     On information and belief, Marlow registered the toll free phone number for Express Hotel (1-888-819-2998) through Starpoint on a toll free phone number obtained from VoIP Innovations, a wholesaler of Voice Over Internet Protocol services.

100.     On information and belief, Marlow publishes and operates a blog for Express Hotel, http://expresshotelhousing.blogspot.com.  As recently as October 13, 2015, Marlow

posted for Express Hotel on the blog. Express Hotel also has posted its blog content on an internet site called "Scoop.it!" on a page labeled "Temporary Housing Curated by Express Hotel Housing" http://www.scoop.it/t/expresshotel.

101.     On its Facebook page, www.facebook.com/Expresshotelhousing?fref=photo, entry dated August 28, 2015, Express Hotel states "Why Choose Express Hotel Housing over other relocation companies? Express Hotel Housing provides short term Hotel accommodations as well as long term (90 days to one year). Express has developed a bundle of digital world tools to make things go smoothly and seamlessly. We generate easy to understand billing, utilize gsm text alerts, and provide 24/7 personal service."

102.     On its Facebook page, www.facebook.com/Expresshotelhousing?fref=photo, Express Hotel claims that it is a "Non-Governmental Organization (NGO)." The Office of the Secretary of State of Illinois reports that Starpoint Digital, Inc. registered "Express Hotel Housing" as an assumed name and is an Illinois domestic for-profit corporation.

**The Express Hotel Website**

103.     According to the website www.whois.net, on or about June 24, 2015, the Express Hotel website, http://www.expresshotelhousing.com, was registered as a domain name on MyStarPoint.com, which is a web hosting service provided by Starpoint.

104.     Starpoint provides customized internet services to program, design, host and market a commercial website.

105.      Starpoint is comprised of a group of internet professionals with over twenty years of experience in building networks and data solutions. Marlow is the President, Chief Executive Officer and founder of Starpoint.

106.    The design, layout, and content of the Express Hotel website is strikingly similar to ALE's website, https://www.alesolutions.com, which was the first professional website in the industry.

107.    Express Hotel's website uses the same color scheme as ALE's website (black and gold), and copies ALE's layout of allowing the user to click on tabs on the top of the webpage to select hotel placement, housing placement, policyholders and adjuster.

108.    The majority of the content on Express Hotel's website is copied directly from ALE's website and reworded with the same key words and substance.  For example, under the "Hotel" tab, ALE's website states that:

> First Notice of Loss (FNOL) is a critical touch point in the claims process. A hotel is the first need of a policyholder who has lost the use of their home. Don't let this opportunity go unmet. Within the hour, ALE will secure an appropriate, cost-effective hotel accommodation for your policyholder. By making one **call** to ALE, you have served the immediate need, gained control of the claim and developed trust with your policyholder.

Express Hotel's website, in contrast, states in its "Hotel" tab:

> After the First Notice of Loss (FONL) is reported, the next few moments are critical. Once the claim is reported to the Express Trak dashboard, the policyholder is contacted within minutes with hotel options that are tailored to suit the family's needs. With one click or call to Express Hotels, you have gained the trust of your policyholder and a reliable partner in the claims process for cost-effective, convenient, and reliable results.

109.    The front page of Express Hotel's website advertises, "Simplified Billing" and "Automation Meets Personal Services," which is a reproduction of ALE's trademarked motto of "Simple. Mobile. Personal."

110.    Certain portions of Express Hotel's website copy text from ALE's website verbatim, such as the answers to Express Hotel's Frequently Asked Questions under the "Housing" and "Adjuster" tabs.  For one answer on Express Hotel's website regarding security

deposits, the designer neglected to substitute "Express Hotel" in place of "ALE Solutions," and as of October 14, 2015, the Express Hotel's website states:

> We prefer that deposits be advanced from contents or other appropriate coverage. This expedited the housing process and encourages the policyholder to take good care of the property and furnishing. Exposing either the insurance company or ***ALE Solutions*** to damage costs only serve to increase over housing costs. *[Emphasis added.]*

111.    The Express Hotel website also has a link to "register" a property to its database for potential policyholder placement. This form is copied directly from ALE's "Register Property" link, and includes each and every question and specification of the property included on ALE's website.

112.    Express Hotel's website purports to have its own adjuster online portal ("Express Trak").

113.    Express Hotel promotes Express Trak in its brochure as a fully automated and interactive adjuster portal giving 24/7 access to manage all aspects of a claim from first notice of loss to check-out as well as allowing an adjuster to customize a personal dashboard and billing preferences with itemized invoices on demand.

114.    On information and belief, the dashboard, layout, format, and functionality of Express Trak incorporates the same, or substantially the same, dashboard, content, functions, and interfaces as the MyALE Portal, which is not available to the general public.

115.    Only persons with access to the MyALE Portal would be able to view the MyALE Portal and know its layout, format and functionality.

116.    Upon information and belief, Starpoint, Marlow and Palazzo, individually or collectively, copied, downloaded, or otherwise recreated the operating program of the MyALE Portal, or conspired to copy, download or otherwise recreate the operating program of the

MyALE Portal, through the Outside IP Address, using Palazzo's username and password, to create Express Trak.

**Palazzo, Marlow, Starpoint and Garcia Solicit ALE Employees and Customers**

117.    On information and belief, Palazzo, Marlow and Starpoint solicited Garcia to leave his employment with ALE for Express Hotel.

118.    On information and belief, Garcia is now employed by Express Hotel.

119.    On or about September 2, 2015, an ALE employee received a Facebook "friend" request from Smith Taylor.  The ALE employee accepted the friend request.  On September 4, 2015, Smith Taylor requested that the ALE employee "like" the Express Hotel Housing Facebook page.  The ALE employee researched Express Hotel's website, noticed the striking similarities to the ALE website and reported her concern to ALE management.

120.    On information and belief, Smith Taylor is a fictitious Facebook account created by Marlow, Starpoint and Palazzo for the purpose of advertising the Express Hotel Facebook page and website to, among other things, solicit ALE employees and customers.

121.    On or about September 11, 2015, ALE was notified by one of its insurance adjuster customers ("Insurance Adjuster No. 1") that Express Hotel sent him a direct email marketing message from the email address "ExpressHH<adjusters@expresshotelshousing.com>"

122.    Insurance Adjuster No. 1 informed ALE of his concern regarding how Express Hotel obtained his private email contact information.

123.    On information and belief, Express Hotel is conducting a direct marketing email campaign to ALE's insurance adjuster customers using the Stolen Contact Data via MailChimp, a service designed to send mass marketing emails to a targeted audience.

22

124.     In September of 2015, another insurance adjuster customer of ALE ("Insurance Adjuster No. 2") reported to ALE that he had received several voicemail messages from individuals identifying themselves with Express Hotel, as well as two calls directly from Garcia, to solicit his business.

125.     Insurance Adjuster No. 2 is a long-time and loyal customer of ALE and despite informing Express Hotel that he is not in need of Express Hotel's services, Express Hotel's solicitations continued.

126.     On or about September 18, 2015, Palazzo emailed Insurance Adjuster No. 2, from the email address theresa.palazzo@expresshotelhousing.com, to share details regarding Express Hotel's claim process and the "unique" features of its Express Trak dashboard.  Palazzo attached an Express Hotel brochure to the email.

127.     During the course of her employment with ALE, Palazzo was the single point of contact and Hotel NAM for Insurance Adjuster No. 2, and had access to his contact information via the ALE Database.

128.     On information and belief, Palazzo, Garcia, Marlow and Starpoint used the Stolen Contact Data to solicit Insurance Adjuster No. 1, Insurance Adjuster No. 2 and to send mass marketing emails through Mailchimp or similar service providers.

**ALE Investigation**

129.     ALE has spent over 120 hours and in excess of $5,000 investigating the unauthorized access of the MyALE Portal via the Outside IP Address and the misappropriation of the Stolen Contact Data via the Palazzo Spreadsheets.

130.     In furtherance of ALE's investigation, ALE's system administration performed a forensic investigation of Palazzo and Garcia's personal work computers, including researching

23

all browser history, reviewing all documents and document history, reviewing terminal services activity for evidence of remote login to ALE, reviewing all email activity for evidence of remote login to ALE, reviewing Palazzo's MyALE login activity, reviewing and restoring back-ups of deleted and sent emails, reviewing and restoring deleted documents, and reviewing ALE's software for archived items.

131.    ALE's officers and human resource employees have devoted significant time investigating Express Hotel's online and social media presence and obtaining documents and emails sent to ALE insurance adjuster customers by Palazzo, Garcia and Express Hotel.

132.    ALE has also dedicated time and resources to review its current procedures and security measures to prevent unauthorized access to the MyALE Portal and its other electronic information.

**COUNT ONE**
**BREACH OF THE FEDERAL COMPUTER FRAUD AND ABUSE ACT**
**(against Palazzo)**

133.    ALE restates, realleges and incorporates by reference Paragraphs 1 through 132 as if they were fully set forth herein as Paragraph 133.

134.    ALE's computers, database, and servers are used in interstate commerce and are protected computers pursuant to the Computer Fraud and Abuse Act (the "CFAA"), 18 U.S.C. § 1030(e).

135.    The ALE Database is stored on, and may be accessed from, one or more of these protected computers owned by ALE, access to which is strictly controlled via various security measures, including secret passwords.

136.    Palazzo accessed the secure, protected computer of ALE, without authorization or in excess of her authorization, to copy, duplicate, download, upload and/or transfer ALE's

electronic information, including ALE's proprietary trade secrets and Confidential Information, in violation of 18 U.S.C. § 1030(a)(2) and (a)(4).

137.    Palazzo, through her actions, intentionally, knowingly, and with the intent to defraud, accessed the secure, protected computer of ALE, without authorization or in excess of her authorization, and has caused ALE to incur losses in excess of $5,000 during a one-year period in responding to her misconduct, including without limitation, conducting a damage and security assessment and investigation of damage incurred as a result of Palazzo's unauthorized access.

WHEREFORE, Plaintiff, ALE Solutions, Inc., respectfully requests that this Court enter the following relief:

a)      judgment in favor of ALE and against Palazzo on Count One;

b)      entry of an order enjoining Palazzo from directly or indirectly soliciting the business of any person or company whose contact information is or was stored on the ALE Database at the time of the termination of the employment relationship between Palazzo and ALE;

c)      entry of an order enjoining Palazzo from directly or indirectly soliciting employees of ALE from leaving the employ of ALE for employment with Express Hotel or to otherwise compete against ALE;

d)      entry of an order enjoining Palazzo from using, directly or indirectly, the stolen source code, software and operating data downloaded or copied from the unauthorized access of the MyALE Portal or any ALE electronic database for use in Express Hotel's Express Trak portal or other similar platform;

e)      entry of an order enjoining Palazzo from directly or indirectly using or disclosing any information or documents obtained from the access of ALE's Confidential Information and to return all such information to ALE;

f)      entry of an order directing Palazzo to return all copies of confidential and proprietary information, documents and/or data downloaded, copied or otherwise obtained from the access of ALE's electronic information, including without limitation, the Stolen Contact Data and the MyALE Portal operating program, source code and/or operating data;

g) entry of an order directing that the Express Hotel website and all related content posted on other internet sites be removed and deleted from the internet;

h) entry of an order that the Express Trak portal be removed or deleted from the internet;

i) entry of an order enforcing the terms of the Palazzo Nonsolicitation Agreement;

j) entry of an order enjoining Palazzo from working for Express Hotel or any other business in competition with ALE;

k) award compensatory damages in an amount to be determined at trial;

l) award of reasonable attorneys' fees and costs of prosecuting this action;

m) award interest on damages as allowed by law; and

n) award such other and further relief as the Court deems just and appropriate.

## COUNT TWO
## BREACH OF THE FEDERAL COMPUTER FRAUD AND ABUSE ACT
### (against Marlow and Starpoint)

138. ALE restates, realleges and incorporates by reference Paragraphs 1 through 137 as if they were fully set forth herein as Paragraph 138.

139. ALE's computers, database, and servers are used in interstate commerce and are protected computers pursuant to the Computer Fraud and Abuse Act (the "CFAA), 18 U.S.C. § 1030(e).

140. The MyALE Portal is stored on ALE's database and servers and may be accessed only through strictly-controlled security measures, including secret passwords.

141. Upon information and belief, Marlow and Starpoint, either individually or collectively, accessed the secure, protected database and server of ALE, without authorization or in excess of their authorization to copy, duplicate, download, upload and/or transfer ALE's

electronic information, including ALE's proprietary trade secrets and Confidential Information, in violation of 18 U.S.C. § 1030(a)(2) and (a)(4).

142.     Marlow and Starpoint, through their actions, intentionally, knowingly, and with the intent to defraud, accessed the secure, protected computer of ALE, without authorization or in excess of their authorization, and has caused ALE to incur losses in excess of $5,000 during a one-year period in responding to their misconduct, including, without limitation, conducting a damage and security assessment and investigation of damage incurred as a result of their unauthorized access.

WHEREFORE, Plaintiff, ALE Solutions, Inc., respectfully requests that this Court enter the following relief:

a)      judgment in favor of ALE and against Marlow and Starpoint on Count Two;

b)      entry of an order enjoining Marlow and Starpoint from using or disclosing any information or documents obtained from the access of ALE's electronic information without authorization or in excess of authorization and to return all such information to ALE;

c)      entry of an order directing Marlow and Starpoint to return all copies of information or documents obtained without authorization or in excess of authorization;

d)      entry of an order directing that the Express Hotel website and all related content posted on other internet sites be removed and deleted from the internet;

e)      entry of an order that the Express Trak portal be removed or deleted from the internet;

f)      award compensatory damages in an amount to be determined at trial;

g)      award of reasonable attorneys' fees and costs of prosecuting this action;

h)      award interest on damages as allowed by law; and

i)      award such other and further relief as the Court deems just and appropriate.

## COUNT THREE
## BREACH OF CONTRACT
### (against Palazzo)

143. ALE restates, realleges and incorporates by reference Paragraphs 1 through 142 as if they were fully set forth herein as Paragraph 143.

144. The Palazzo Nonsolicitation Agreement is a valid and enforceable contract pursuant to which Palazzo was obligated to perform.

145. Palazzo breached the terms of the Palazzo Nonsolicitation Agreement by, *inter alia*:

a. Downloading, copying or otherwise taking ALE's Confidential Information, including but not limited to the Stolen Contact Data, from the ALE Database for the direct or indirect benefit of the Defendants;

b. Using ALE's Confidential Information, including but not limited to the Stolen Contact Data, for the direct or indirect benefit of the Defendants.

c. Disclosing ALE's Confidential Information, including but not limited to the Stolen Contact Data, to Express Hotel for the direct or indirect benefit of the Defendants;

d. Disclosing ALE's Confidential Information, including but not limited to the Stolen Contact Data, to Starpoint for the direct or indirect benefit of the Defendants;

e. Disclosing ALE's Confidential Information, including but not limited to the Stolen Contact Data, to Marlow for the direct or indirect benefit of the Defendants;

f. Disclosing ALE's Confidential Information, including but not limited to the Stolen Contact Data, to Garcia for the direct or indirect benefit of the Defendants;

g. Disclosing ALE's Confidential Information, including but not limited to the Stolen Contact Data, to MailChimp for the direct or indirect benefit of the Defendants;

h. Disclosing her MyALE Portal username and password to an individual not employed by ALE for the direct or indirect benefit of the Defendants;

i. Directly and indirectly soliciting customers of ALE to do business with Express Hotel for the direct or indirect benefit of the Defendants; and

j.     Directly and indirectly soliciting employees to leave the employ for ALE for Express Hotel for the direct or indirect benefit of the Defendants.

146.    As a direct and proximate result of Palazzo's breaches, ALE has suffered and will continue to suffer damages.

147.    As a direct and proximate result of Palazzo's breaches, ALE is suffering immediate and irreparable harm in the form of lost customers, lost costumer relationships, lost revenue, loss of goodwill, and other injuries.

WHEREFORE, Plaintiff, ALE Solutions, Inc., respectfully requests that this Court enter the following relief:

a)    judgment in favor of ALE and against Palazzo on Count Three;

b)    entry of an order enjoining Palazzo from directly or indirectly soliciting the business of any person or company whose contact information is or was stored on the ALE Database at the time of the termination of the employment relationship between Palazzo and ALE;

c)    entry of an order enjoining Palazzo from directly or indirectly soliciting employees of ALE from leaving the employ of ALE for employment with Express Hotel or to otherwise compete against ALE;

d)    entry of an order enjoining Palazzo from using, directly or indirectly, the stolen source code, software and operating data downloaded or copied from the unauthorized access of the MyALE Portal or any ALE electronic database for use in Express Hotel's Express Trak portal or other similar platform;

e)    entry of an order enjoining Palazzo from directly or indirectly using or disclosing any information or documents obtained from the access of ALE's Confidential Information and to return all such information to ALE;

f)    entry of an order directing Palazzo to return all copies of confidential and proprietary information, documents and/or data downloaded, copied or otherwise obtained from the access of ALE's electronic information, including without limitation, the Stolen Contact Data and the MyALE Portal operating program, source code and/or operating data;

g)    entry of an order directing that the Express Hotel website and all related content posted on other internet sites be removed and deleted from the internet;

h)    entry of an order that the Express Trak portal be removed or deleted from the internet;

i)    entry of an order enforcing the terms of the Palazzo Nonsolicitation Agreement;

j)    entry of an order enjoining Palazzo from working for Express Hotel or any other business in competition with ALE;

k)    award compensatory damages in an amount to be determined at trial;

l)    award of reasonable attorneys' fees and costs of prosecuting this action;

m)    award interest on damages as allowed by law; and

n)    award such other and further relief as the Court deems just and appropriate.

## COUNT FOUR
## BREACH OF CONTRACT
### (against Garcia)

148.    ALE restates, realleges and incorporates by reference Paragraphs 1 through 147 as if they were fully set forth herein as Paragraph 148.

149.    The Garcia Nonsolicitation Agreement is a valid and enforceable contract pursuant to which Garcia was obligated to perform.

150.    Garcia breached the terms of the Garcia Nonsolicitation Agreement by using ALE's Confidential Information, including but not limited to the Stolen Contact Data, to solicit customers of ALE to do business with Express Hotel for the direct or indirect benefit of the Defendants.

151.    As a direct and proximate result of Garcia's breaches, ALE has suffered and will continue to suffer damages.

152.     As a direct and proximate result of Garcia's breaches, ALE is suffering immediate and irreparable harm in the form of lost customers, lost costumer relationships, lost revenue, loss of goodwill, and other injuries.

WHEREFORE, Plaintiff, ALE Solutions, Inc., respectfully requests that this Court enter the following relief:

a)     judgment in favor of ALE and against Garcia on Count Four;

b)     entry of an order enjoining Garcia from directly or indirectly soliciting the business of any person or company whose contact information is or was stored on the ALE Database at the time of the termination of the employment relationship between Garcia and ALE;

c)     entry of an order enjoining Garcia from directly or indirectly soliciting employees of ALE from leaving the employ of ALE for employment with Express Hotel or to otherwise compete against ALE;

d)     entry of an order enjoining Garcia from using, directly or indirectly, the stolen source code, software and operating data downloaded or copied from the unauthorized access of the MyALE Portal or any ALE electronic database for use in Express Hotel's Express Trak portal or other similar platform;

e)     entry of an order enjoining Garcia from directly or indirectly using or disclosing any information or documents obtained from the access of ALE's Confidential Information and to return all such information to ALE;

f)     entry of an order directing Garcia to return all copies of confidential and proprietary information, documents and/or data downloaded, copied or otherwise obtained from the access of ALE's electronic information, including without limitation, the Stolen Contact Data and the MyALE Portal operating program, source code and/or operating data;

g)     entry of an order enforcing the terms of the Garcia Nonsolicitation Agreement;

h)     entry of an order enjoining Garcia from working for Express Hotel or any other business in competition with ALE;

i)     award compensatory damages in an amount to be determined at trial;

j)     award of reasonable attorneys' fees and costs of prosecuting this action;

k)      award interest on damages as allowed by law; and

l)      award such other and further relief as the Court deems just and
        appropriate.

## COUNT FIVE
## BREACH OF FIDUCIARY DUTY
### (against Palazzo)

153.    ALE restates, realleges and incorporates by reference Paragraphs 1 through 152 as

if they were fully set forth herein as Paragraph 153.

154.    Palazzo owed fiduciary duties to ALE, including, without limitation, the duty of

fidelity and undivided loyalty.

155.    Palazzo willfully and maliciously breached her fiduciary duties to ALE by, among

other misdeeds:

    a.    Exporting confidential insurance adjuster contact information from the ALE Database for the purpose of competing against ALE for the direct or indirect benefit of the Defendants;

    b.    Distributing her MyALE Portal username and password to an individual not employed by ALE, believed to be Marlow, for the purpose of competing against ALE for the direct or indirect benefit of the Defendants;

    c.    Directly and indirectly soliciting customers of ALE to do business with Express Hotel for the direct or indirect benefit of the Defendants;

    d.    Directly and indirectly soliciting employees to leave the employ of ALE for Express Hotel for the direct or indirect benefit of the Defendants;

    e.    Directly or indirectly using ALE's Confidential Information, including but not limited to the Stolen Contact Data, for the direct or indirect benefit of the Defendants; and

    f.    Creating or conspiring to create a competing business.

156.    Palazzo's breaches of fiduciary duties proximately caused injury to ALE,

including, without limitation, the loss of customers, goodwill and revenue.

157.    As a direct and proximate result of Palazzo's breaches of fiduciary duties, ALE is

suffering immediate and irreparable harm in the form of lost customers, lost costumer

relationships, lost revenue, loss of goodwill, and other injuries.

WHEREFORE, Plaintiff, ALE Solutions, Inc., respectfully requests that this Court enter the following relief:

a)      judgment in favor of ALE and against Palazzo on Count Five;

b)      entry of an order enjoining Palazzo from directly or indirectly soliciting the business of any person or company whose contact information is or was stored on the ALE Database at the time of the termination of the employment relationship between Palazzo and ALE;

c)      entry of an order enjoining Palazzo from directly or indirectly soliciting employees of ALE from leaving the employ of ALE for employment with Express Hotel or to otherwise compete against ALE;

d)      entry of an order enjoining Palazzo from using, directly or indirectly, the stolen source code, software and operating data downloaded or copied from the unauthorized access of the MyALE Portal or any ALE electronic database for use in Express Hotel's Express Trak portal or other similar platform;

e)      entry of an order enjoining Palazzo from directly or indirectly using or disclosing any information or documents obtained from the access of ALE's Confidential Information and to return all such information to ALE;

f)      entry of an order directing Palazzo to return all copies of confidential and proprietary information, documents and/or data downloaded, copied or otherwise obtained from the access of ALE's electronic information, including without limitation, the Stolen Contact Data and the MyALE Portal operating program, source code and/or operating data;

g)      entry of an order directing that the Express Hotel website and all related content posted on other internet sites be removed and deleted from the internet;

h)      entry of an order that the Express Trak portal be removed or deleted from the internet;

i)      entry of an order enforcing the terms of the Palazzo Nonsolicitation Agreement;

j)      entry of an order enjoining Palazzo from working for Express Hotel or any other business in competition with ALE;

k)      award compensatory damages in an amount to be determined at trial;

l)      award of reasonable attorneys' fees and costs of prosecuting this action;

m)    award interest on damages as allowed by law; and

n)    award such other and further relief as the Court deems just and
appropriate.

## COUNT SIX
## VIOLATIONS OF ILLINOIS TRADE SECRET ACT
### (against Palazzo, Marlow, and Starpoint)

158.    ALE restates, realleges and incorporates by reference Paragraphs 1 through 157 as

if they were fully set forth herein as Paragraph 158.

159.    The ALE Database is a list of actual or potential customers of ALE that are not

generally known to others who could benefit from using the contact data.

160.    ALE derives independent economic value from the ALE Database not being

known to other persons, and by it not being readily ascertainable by proper means by other

persons who could obtain economic value from the disclosure of such information.

161.    The MyALE Portal is composed of technical and non-technical data and programs

that are unique and propriety to ALE.

162.    ALE derives independent economic value from the MyALE Portal not being

known to, and not being readily ascertainable by proper means by other persons who could

obtain economic value from the disclosure of such information.

163.    ALE takes reasonable steps to protect the secrecy of the ALE Database and

MyALE Portal including, without limitation: (i) requiring all employees to execute a

Confidentiality, Nonsolicitation and Noncompetition Agreement; (ii) requiring all employees to

review an Employee Handbook which provides information and instructions regarding access,

use and disclosure of Confidential Information; (iii) limiting access to the ALE Database to

certain ALE employees who receive a unique username and password; (iv) limiting access to the

MyALE Portal to certain ALE employees and insurance adjusters who receive a unique

username and password; and (v) disclosing in the acknowledged and accepted Terms of Service for the MyALE Portal that all content and software is the property of ALE, protected by copyright laws and may not be copied, uploaded, posted or otherwise made available.

164. The ALE Database and MyALE Portal constitute trade secrets under the Illinois Trade Secret Act (the "Act"), 765 ILCS 1065.

165. Palazzo willfully and maliciously misappropriated the Stolen Contact Data through improper acquisition, downloading, and copying during the course of her employment with ALE for the purpose of competing against ALE, and by disclosing the Stolen Contact Data to third-parties, including, but not limited to, Starpoint, Marlow, Garcia and MailChimp, to solicit customers of ALE.

166. Starpoint and Marlow, either collectively or individually, willfully and maliciously misappropriated the Stolen Contact Data by acquiring the Stolen Contact Data with reason to know that it was acquired through improper means, and by using the Stolen Contact Data to solicit customers of ALE.

167. Palazzo willfully and maliciously misappropriated the MyALE Portal operating program, source code and/or operating data by disclosing her username and password to a third party not employed by ALE, believed to be Marlow and Starpoint, for the purpose of downloading and copying the MyALE Portal operating program, source code and/or operating data for the purpose of competing against ALE.

168. Starpoint willfully and maliciously misappropriated the MyALE Portal operating program, source code and/or operating data by acquiring the MyALE Portal operating program, source code and/or operating data with reason to know that it was acquired through improper

means, and by using the MyALE Portal operating program, source code and/or operating data to create a competing product, Express Trak.

169.    Marlow willfully and maliciously misappropriated the MyALE Portal operating program, source code and/or operating data through improper access, acquisition, downloading, and copying for the purpose of disclosing the MyALE Portal operating program, source code and/or operating data to Starpoint to develop a competing product, Express Trak.

170.    As competitors of ALE, there is a genuine, imminent threat that Palazzo, Marlow and Starpoint will continue to use and disclose the Stolen Contact Data and MyALE Portal operating program, source code and/or operating data in the course of their business and business actives.

171.    ALE has been and will continue to be damaged by Palazzo, Marlow and Starpoint's misappropriation of the Stolen Contact Data and the MyALE Portal operating program, source code and/or operating data including, without limitation, lost customers, lost customer relationships, lost revenue, loss of goodwill, reputational injury, and other damages.

172.    ALE is entitled to an injunction prohibiting the misappropriation of its trade secrets by Palazzo, Marlow and Starpoint.

WHEREFORE, Plaintiff, ALE Solutions, Inc., respectfully requests that this Court enter the following relief:

a)    judgment in favor of ALE and against Palazzo, Marlow and Starpoint on Count Six;

b)    entry of an order enjoining Palazzo, Marlow, and Starpoint from directly or indirectly soliciting the business of any person or company whose contact information is or was stored on the ALE Database at the time of the termination of the employment relationship between Palazzo and ALE;

c)    entry of an order enjoining Palazzo from using, directly or indirectly, the stolen source code, software and operating data downloaded or copied from the unauthorized access of the MyALE Portal or any ALE electronic

database for use in Express Hotel's Express Trak portal or other similar platform;

d)      entry of an order enjoining Palazzo, Marlow, and Starpoint from directly or indirectly using or disclosing any information or documents obtained from the access of ALE's Confidential Information and to return all such information to ALE;

e)      entry of an order directing Palazzo, Marlow, and Starpoint to return all copies of confidential and proprietary information, documents and/or data downloaded, copied or otherwise obtained from the access of ALE's electronic information, including without limitation, the Stolen Contact Data and the MyALE Portal operating program, source code and/or operating data;

f)      entry of an order directing that the Express Hotel website be removed and deleted from the internet;

g)      entry of an order directing that the Express Hotel website and all related content posted on other internet sites be removed and deleted from the internet;

h)      award compensatory damages in an amount to be determined at trial;

i)      award of reasonable attorneys' fees and costs of prosecuting this action;

j)      award interest on damages as allowed by law; and

k)      award such other and further relief as the Court deems just and appropriate.

**COUNT SEVEN**
**TORTIOUS INTERFERENCE WITH CONTRACT**
**(against Palazzo, Starpoint and Marlow)**

173.      ALE restates, realleges and incorporates by reference Paragraphs 1 through 172 as if they were fully set forth herein as Paragraph 173.

174.      The Palazzo Nonsolicitation Agreement is a valid and enforceable contract between Palazzo and ALE.

175.      Starpoint and Marlow had either actual or constructive knowledge of the covenants in the Palazzo Nonsolicitation Agreement.

176. Starpoint and Marlow intentionally and without justification induced Palazzo to breach the Palazzo Nonsolicitation Agreement.

177. The Garcia Nonsolicitation Agreement is a valid and enforceable contract between Garcia and ALE.

178. Palazzo, Starpoint and Marlow had either actual or constructive knowledge of the covenants in the Garcia Nonsolicitation Agreement.

179. Palazzo, Starpoint and Marlow intentionally and without justification induced Garcia to breach the Garcia Nonsolicitation Agreement.

180. Palazzo, Starpoint and Marlow wrongfully acted for the purpose of interfering, undermining, and destroying the business conducted by ALE, and to appropriate that business for themselves.

181. As a direct and proximate result of Palazzo, Starpoint and Marlow's actions and the breaches of the Nonsolicitation Agreements by Palazzo and Garcia, ALE is suffering immediate and irreparable harm, in the form of lost customers, lost customer relationships, lost revenue, loss of goodwill, reputational injury, and other injuries.

WHEREFORE, Plaintiff, ALE Solutions, Inc., respectfully requests that this Court enter the following relief:

a) judgment in favor of ALE and against Palazzo, Starpoint and Marlow on Count Seven;

b) entry of an order enjoining Palazzo, Marlow and Starpoint from directly or indirectly soliciting the business of any person or company whose contact information is or was stored on the ALE Database at the time of the termination of the employment relationship between Palazzo and ALE;

c) entry of an order enjoining Palazzo, Marlow and Starpoint from directly or indirectly soliciting employees of ALE from leaving the employ of ALE for employment with Express Hotel or to otherwise compete against ALE;

d)      entry of an order enjoining Palazzo, Marlow and Starpoint from using, directly or indirectly, the stolen source code, software and operating data downloaded or copied from the unauthorized access of the MyALE Portal or any ALE electronic database for use in Express Hotel's Express Trak portal or other similar platform;

e)      entry of an order enjoining Palazzo, Marlow and Starpoint from directly or indirectly using or disclosing any information or documents obtained from the access of ALE's Confidential Information and to return all such information to ALE;

f)      entry of an order directing Palazzo, Marlow and Starpoint to return all copies of confidential and proprietary information, documents and/or data downloaded, copied or otherwise obtained from the access of ALE's electronic information, including without limitation, the Stolen Contact Data and the MyALE Portal operating program, source code and/or operating data;

g)      entry of an order directing that the Express Hotel website be removed and deleted from the internet;

h)      entry of an order directing that the Express Hotel website and all related content posted on other internet sites be removed and deleted from the internet;

i)      entry of an order enforcing the terms of the Palazzo Nonsolicitation Agreement;

j)      entry of an order enforcing the terms of the Garcia Nonsolicitation Agreement;

k)      entry of an order enjoining Palazzo from working for Express Hotel or any other business in competition with ALE;

l)      entry of an order enjoining Garcia from working for Express Hotel or any other business in competition with ALE;

m)      award compensatory damages in an amount to be determined at trial;

n)      award of reasonable attorneys' fees and costs of prosecuting this action;

o)      award interest on damages as allowed by law; and

p)      award such other and further relief as the Court deems just and appropriate.

**COUNT EIGHT**
**CIVIL CONSPIRACY**
**(against Palazzo, Garcia, Marlow and Starpoint,)**

182.     ALE restates, realleges and incorporates by reference by reference Paragraphs 1

through 181 as if they were fully set forth herein as Paragraph 182.

183.     Defendants, individually and collectively, willfully, maliciously, knowingly and

voluntarily committed, without the limitation, the following acts in furtherance of their

conspiracy:

> a)     Downloaded, copied or otherwise took ALE's Confidential Information, including but not limited to the Stolen Contact Data, from the ALE Database for the direct or indirect benefit of the Defendants;
>
> b)     Downloaded, copied or otherwise took the MyALE Portal operating program, source code and/or operating data to create a competing program, Express Trak for the direct or indirect benefit of the Defendants;
>
> c)     Used ALE's Confidential Information, including but not limited to the Stolen Contact Data, for the direct or indirect benefit of the Defendants;
>
> d)     Created Express Hotel to compete against ALE for the direct or indirect benefit of the Defendants;
>
> e)     Disclosed ALE's Confidential Information, including but not limited to the Stolen Contact Data, to Express Hotel for the direct or indirect benefit of the Defendants;
>
> f)     Disclosed ALE's Confidential Information, including but not limited to the Stolen Contact Data, to Starpoint for the direct or indirect benefit of the Defendants;
>
> g)     Disclosed ALE's Confidential Information, including but not limited to the Stolen Contact Data, to Marlow for the direct or indirect benefit of the Defendants;
>
> h)     Disclosed ALE's Confidential Information, including but not limited to the Stolen  Contact Data, to Garcia for the direct or indirect benefit of the Defendants;
>
> i)     Disclosed ALE's Confidential Information, including but not limited to the Stolen Contact Data, to MailChimp for the direct or indirect benefit of the Defendants;

       j)      Directly and indirectly solicited customers of ALE to do business with Express Hotel for the direct or indirect benefit of the Defendants; and

       k)      Directly and indirectly solicited employees to leave the employ for ALE for Express Hotel for the direct or indirect benefit of the Defendants.

184.    Upon information and belief, Defendants agreed and conspired to commit the unlawful acts in furtherance of their conspiracy.

185.    As a direct and proximate result of the above-described conspiracy, ALE is suffering immediate and irreparable harm, in the form of lost customers, lost customer relationships, lost revenue, loss of goodwill, reputational injury, and other injuries.

WHEREFORE, Plaintiff, ALE Solutions, Inc., respectfully requests that this Court enter the following relief:

       a)      judgment in favor of ALE and against Palazzo, Garcia, Marlow and Starpoint on Count Eight;

       b)      entry of an order enjoining Palazzo, Garcia, Marlow and Starpoint from directly or indirectly soliciting the business of any person or company whose contact information is or was stored on the ALE Database at the time of the termination of the employment relationship between Palazzo and ALE;

       c)      entry of an order enjoining Palazzo, Garcia, Marlow and Starpoint from directly or indirectly soliciting employees of ALE from leaving the employ of ALE for employment with Express Hotel or to otherwise compete against ALE;

       d)      entry of an order enjoining Palazzo, Garcia, Marlow and Starpoint from using, directly or indirectly, the stolen source code, software and operating data downloaded or copied from the unauthorized access of the MyALE Portal or any ALE electronic database for use in Express Hotel's Express Trak portal or other similar platform;

       e)      entry of an order enjoining Palazzo, Garcia, Marlow and Starpoint from directly or indirectly using or disclosing any information or documents obtained from the access of ALE's Confidential Information and to return all such information to ALE;

       f)      entry of an order directing Palazzo, Garcia, Marlow and Starpoint to return all copies of confidential and proprietary information, documents and/or

data downloaded, copied or otherwise obtained from the access of ALE's electronic information, including without limitation, the Stolen Contact Data and the MyALE Portal operating program, source code and/or operating data;

g)      entry of an order directing that the Express Hotel website be removed and deleted from the internet;

h)      entry of an order directing that the Express Hotel website and all related content posted on other internet sites be removed and deleted from the internet;

i)      entry of an order enforcing the terms of the Palazzo Nonsolicitation Agreement;

j)      entry of an order enforcing the terms of the Garcia Nonsolicitation Agreement;

k)      entry of an order enjoining Palazzo from working for Express Hotel or any other business in competition with ALE;

l)      entry of an order enjoining Garcia from working for Express Hotel or any other business in competition with ALE;

m)      award compensatory damages in an amount to be determined at trial;

n)      award of reasonable attorneys' fees and costs of prosecuting this action;

o)      award interest on damages as allowed by law; and

p)      award such other and further relief as the Court deems just and appropriate.

**<u>COUNT NINE</u>**
**<u>UNFAIR COMPETITION</u>**
**(against Palazzo, Garcia, Marlow and Starpoint)**

186.    ALE restates, realleges and incorporates by reference Paragraphs 1 through 185 as if they were fully set forth herein as Paragraph 186.

187.    Defendants are unfairly competing against ALE by utilizing ALE's Confidential Information, including, but not limited to, the Stolen Contact Data and the MyALE Portal operating program, source code and/or operating data by soliciting ALE's customers.

188.     As a direct and proximate result of the unfair competition, ALE is suffering immediate and irreparable harm, in the form of lost customers, lost customer relationships, lost revenue, loss of goodwill, reputational injury, and other injuries.

WHEREFORE, Plaintiff, ALE Solutions, Inc., respectfully requests that this Court enter the following relief:

a)      Judgment in favor of ALE and against Palazzo, Garcia, Marlow and Starpoint on Count Nine;

b)      entry of an order enjoining Palazzo, Garcia, Marlow and Starpoint from directly or indirectly soliciting the business of any person or company whose contact information is or was stored on the ALE Database at the time of the termination of the employment relationship between Palazzo and ALE;

c)      entry of an order enjoining Palazzo, Garcia, Marlow and Starpoint from directly or indirectly soliciting employees of ALE from leaving the employ of ALE for employment with Express Hotel or to otherwise compete against ALE;

d)      entry of an order enjoining Palazzo, Garcia, Marlow and Starpoint from using, directly or indirectly, the stolen source code, software and operating data downloaded or copied from the unauthorized access of the MyALE Portal or any ALE electronic database for use in Express Hotel's Express Trak portal or other similar platform;

e)      entry of an order enjoining Palazzo, Garcia, Marlow and Starpoint from directly or indirectly using or disclosing any information or documents obtained from the access of ALE's Confidential Information and to return all such information to ALE;

f)      entry of an order directing Palazzo, Garcia, Marlow and Starpoint to return all copies of confidential and proprietary information, documents and/or data downloaded, copied or otherwise obtained from the access of ALE's electronic information, including without limitation, the Stolen Contact Data and the MyALE Portal operating program, source code and/or operating data;

g)      entry of an order directing that the Express Hotel website and all related content posted on other internet sites be removed and deleted from the internet;

h)   entry of an order that the Express Trak portal be removed or deleted from the internet;

i)   entry of an order enforcing the terms of the Palazzo Nonsolicitation Agreement;

j)   entry of an order enforcing the terms of the Garcia Nonsolicitation Agreement;

k)   entry of an order enjoining Palazzo from working for Express Hotel or any other business in competition with ALE;

l)   entry of an order enjoining Garcia from working for Express Hotel or any other business in competition with ALE;

m)   award compensatory damages in an amount to be determined at trial;

n)   award of reasonable attorneys' fees and costs of prosecuting this action;

o)   award interest on damages as allowed by law; and

p)   award such other and further relief as the Court deems just and appropriate.

**COUNT TEN**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE**
**ECONOMIC ADVANTAGE**
**(against Palazzo, Garcia, Marlow and Starpoint)**

189.   ALE restates, realleges and incorporates by reference Paragraphs 1 through 188 as if they were fully set forth herein as Paragraph 189.

190.   ALE has a reasonable expectancy of entering into and furthering its business relationships with Insurance Adjuster No. 1, Insurance Adjuster No. 2, and each and every insurance adjuster whose contact information was included in the Stolen Contact Data.

191.   Defendants had either express or constructive knowledge of ALE's business expectancy with Insurance Adjuster No. 1, Insurance Adjuster No. 2, and each and every insurance adjuster whose contact information was included in the Stolen Contact Data.

192.   Defendants interfered with ALE's business expectancy by soliciting Insurance Adjuster No. 1, Insurance Adjuster No 2 and, on information and belief, directing an email

marketing campaign through MailChimp to each and every insurance adjuster whose contact information was included in the Stolen Contact Data.

193.    As a direct and proximate result of Defendants' interference, ALE is suffering immediate and irreparable harm in the form of lost customers, lost costumer relationships, lost revenue, loss of goodwill, and other injuries.

WHEREFORE, Plaintiff, ALE Solutions, Inc., respectfully requests that this Court enter the following relief:

a)  Judgment in favor of ALE and against Palazzo, Garcia Marlow and Starpoint on Count Ten;

b)  entry of an order enjoining Palazzo, Garcia, Marlow and Starpoint from directly or indirectly soliciting the business of any person or company whose contact information is or was stored on the ALE Database at the time of the termination of the employment relationship between Palazzo and ALE;

c)  entry of an order enjoining Palazzo, Garcia, Marlow and Starpoint from directly or indirectly soliciting employees of ALE from leaving the employ of ALE for employment with Express Hotel or to otherwise compete against ALE;

d)  entry of an order enjoining Palazzo, Garcia, Marlow and Starpoint from using, directly or indirectly, the stolen source code, software and operating data downloaded or copied from the unauthorized access of the MyALE Portal or any ALE electronic database for use in Express Hotel's Express Trak portal or other similar platform;

e)  entry of an order enjoining Palazzo, Garcia, Marlow and Starpoint from directly or indirectly using or disclosing any information or documents obtained from the access of ALE's Confidential Information and to return all such information to ALE;

f)  entry of an order directing Palazzo, Garcia, Marlow and Starpoint to return all copies of confidential and proprietary information, documents and/or data downloaded, copied or otherwise obtained from the access of ALE's electronic information, including without limitation, the Stolen Contact Data and the MyALE Portal operating program, source code and/or operating data;

g)  entry of an order directing that the Express Hotel website and all related content posted on other internet sites be removed and deleted from the internet;

h)  entry of an order that the Express Trak portal be removed or deleted from the internet;

i)  entry of an order enforcing the terms of the Palazzo Nonsolicitation Agreement;

j)  entry of an order enforcing the terms of the Garcia Nonsolicitation Agreement;

k)  entry of an order enjoining Palazzo from working for Express Hotel or any other business in competition with ALE;

l)  entry of an order enjoining Garcia from working for Express Hotel or any other business in competition with ALE;

m)  award compensatory damages in an amount to be determined at trial;

n)  award of reasonable attorneys' fees and costs of prosecuting this action;

o)  award interest on damages as allowed by law; and

p)  award such other and further relief as the Court deems just and appropriate.

## <u>JURY DEMAND</u>

Pursuant to Federal Rule of Civil Procedure 38(b), ALE respectfully demands a trial by jury of all issues triable by a jury in its Complaint.

Respectfully submitted,

By:   /s/ *Cheryl Tama Oblander*
_____
One of its Attorneys

Cheryl Tama Oblander (ARDC #6199464)
ctama@agdglaw.com
Benjamin E. Haskin (ARDC #6306126)
bhaskin@agdglaw.com
Lindsay P. Lollio (ARDC #6303140)
llollio@agdglaw.com
Aronberg, Goldgehn, Davis & Garmisa
330 North Wabash Avenue, Suite 1700
Chicago, Illinois 60611
(312) 828-9600
1774492v2